OPINION *Page 2 
{¶ 1} This matter is on appeal from the trial court's order of October 5, 2006, which granted appellee Ruth Huntsman's motion to compel appellant Sajid Q. Chughtai, M.D. to produce certain documents.
 {¶ 2} This matter is also on appeal from the trial court's separate order of October 5, 2006, which denied a motion to Quash Subpoena(s) Duces Tecum filed by Physicians Insurance Co. of Ohio and which denied a motion for Protective Orders filed by Sajid Q. Chughtai, M.D. and Sajid Chughtai, M.D., Inc. The trial court ordered Physicians Insurance Company, Physicians Insurance Company of Ohio, Western Indemnity Insurance Co., Sirak-Moore Insurance Agency, Evanston Insurance Company, Zurich American Insurance Company, Frontier Insurance Company, Medical Mutual of Ohio, Anthem Blue Cross Blue Shield, American International Insurance Company, the Bureau of Workers' Compensation, Medicare, Medicaid and Aultcare HMO to produce requested discovery to the court for an in camera inspection.
 {¶ 3} The appellant, challenging the orders made to Sajid Q. Chughtai M.D. and to Physicians Insurance Company of Ohio, is Aultman Hospital. Physicians Insurance Company of Ohio did not appeal. Sajid Q. Chugtai, M.D. and Sajid Chugtai, M.D., Inc. filed an appeal in Case No. 2006 CA 00331.
 STATEMENT OF FACTS AND CASE {¶ 4} Defendant-appellant, Aultman Hospital (hereinafter "Aultman"), appeals from the trial court's pre-trial discovery orders, which, inter alia, instructed Dr. Chughtai to produce documents that he provided to Aultman Hospital's peer review committee *Page 3 
and which instructed various health insurers and professional liability insurers to produce documents, related to Dr. Chughtai, to the court for an in camera inspection.
 {¶ 5} The procedural history of this case is extensive. The underlying trial court matter involves a medical malpractice cause of action against Dr. Chughtai and a negligent credentialing cause of action against Aultman Hospital. There has also been a prior appeal to this Court involving the trial court's pre-trial discovery orders concerning the disclosure by Aultman Hospital of any records or documentation pertaining to Aultman Hospital's privileged peer review records.
 {¶ 6} The underlying action for medical malpractice and negligent credentialing was filed by appellee, Ruth Huntsman (hereinafter "Huntsman"), on behalf of the estate of Aurelia K. Huntsman, now deceased. In the complaint, Ms. Huntsman alleges that Dr. Chughtai's medical negligence during a surgical procedure to repair a hernia proximately caused Aurelia Huntsman's death.
 {¶ 7} The complaint also alleges that Aultman Hospital negligently granted, renewed and maintained Dr. Chughtai's medical staff privileges. Specifically, the complaint alleges that Aultman Hospital should have been aware that Dr. Chughtai's medical staff privileges were not renewed at Massillon Community Hospital and that between July 7, 1987, and April 20, 1999, at least twelve medical negligence lawsuits were filed against Dr. Chughtai. Ms. Huntsman also alleges that Aultman Hospital's failure to consider these facts regarding Dr. Chughtai's professional competence led to his negligent credentialing by Aultman Hospital and placed him in a position to perform the allegedly negligent surgical procedure. *Page 4 
 {¶ 8} During the discovery phase, and in an initial effort to obtain documents supporting the negligent credentialing claim, Huntsman requested the production of Aultman Hospital's peer review records. Upon a review of the request and in an effort to comply with R.C. 2305.252, the trial court overruled Huntsman's request for the production of the actual peer review records. In the alternative, the trial court ordered Aultman Hospital to provide Huntsman with a list of the documents which had been considered by Aultman Hospital's peer review committee during Dr. Chughtai's peer review process. This initial discovery order led to the first appeal before this Court wherein both Dr. Chughtai and Aultman appealed the trial court's discovery order.
 {¶ 9} On March 28, 2005, in an opinion addressing both Dr. Chughtai and Aultman's claims, this Court determined that the trial court erred in ordering Dr. Chughtai and Aultman Hospital to provide Huntsman with a list of documents from Aultman's peer review and credentialing files. See Huntsman v. Aultman Hosp. (2005), 160 Ohio App. 3d 196,2005-Ohio-1482, 826 N.E.2d 384, appeal denied 106 Ohio St. 3d 1487,2005-Ohio-3978, 832 N.E.2d 739. (Hereinafter "Huntsman I") Specifically, this Court held that any information produced during the peer review process was privileged and could not be ordered to be disclosed, even as a "list of documents", by the health care entity. This Court further stated that, although the documents could not be requested from the health care entity as "peer review records", the records did not enjoy the protection of R.C. 2305.252 outside the scope of the peer review process and were discoverable from original sources. Accordingly, this Court remanded the matter to the trial court for further proceedings consistent with the opinion. *Page 5 
 {¶ 10} On remand, Huntsman again pursued discovery of any information which supported the negligent credentialing claim. In that effort, on August 24, 2005, appellee served Dr. Chughtai personally with a request for the production of documents, and on August 30, 2005, Huntsman served notices of depositions duces tecum on several medical insurance provider networks and professional liability insurance companies.
 {¶ 11} In the request for production of documents served on Dr. Chughtai personally, Huntsman sought the following documents believed to be in Dr. Chughtai's possession: (1) documents in any way related to Dr. Chughtai's accreditation and/or credentialing as a member of any hospital medical staff; (2) documents in any way relating to any application by Dr. Chughtai for professional liability insurance coverage that would in any way cover any claim or potential claim; (3) documents in any way relating to any notification given to any professional liability insurance company of any claim or potential claim in any way involving Dr. Chughtai; and (4) documents in any way relating to Dr. Chughtai being approved or not being approved as a medical service provider by any health insurance company or health insurance plan.
 {¶ 12} In the notices of depositions duces tecum to the medical insurance companies/plans and professional liability insurers, Huntsman requested, inter alia, documents concerning Dr. Chughtai's qualification or status as an approved provider of medical services and documents regarding any application by Dr. Chughtai for liability insurance coverage. *Page 6 
 {¶ 13} The subpoenas issued to The Bureau of Workers' Compensation, Aultcare HMO, Medical Mutual of Ohio and Anthem Blue Cross Blue Shield specifically requested the following:[1]
 {¶ 14} "All documents relating to Sajid Q. Chughtai being approved or not being approved as a medical service provider under any health insurance contract or health insurance plan."
 {¶ 15} The subpoenas issued to American International Insurance Company, Frontier Insurance Company, Zurich American Insurance Company, Evanston Insurance Company, Physicians Insurance Company of Ohio, Physicians Insurance Company and Western Indemnity Insurance Company specifically requested the following:
 {¶ 16} "All documents in any way relating to Sajid Q. Chugtai, including but not limited to, all underwriting files, claims files, audit files and/or files regarding any application for insurance.
 {¶ 17} "All documents by and/or between you and anyone else including but not limited to any professional liability insurance company, Aultman Hospital and/or Sajid Q. Chughtai in any way relating to Sajid Q. Chughtai."
 {¶ 18} The depositions duces tecum were scheduled to proceed on September 26 and 27, 2005.
 {¶ 19} On September 22, 2005, Physicians Insurance Company of Ohio filed a motion to quash Huntsman's deposition duces tecum. *Page 7 
 {¶ 20} On September 23, 2005, Dr. Chughtai filed a motion for a protective order.
 {¶ 21} On September 27, 2005, Dr. Chughtai's malpractice insurance agent, Sirak Moore Insurance Agency, appeared for the deposition and produced the requested documents.
 {¶ 22} On October 11, 2005, Huntsman filed a motion to compel Dr. Chughtai to produce the requested documents. Specifically, the appellee sought to compel Dr. Chughtai to produce any of the following documents in his possession: incident reports, sentinel event reports, applications for medical privileges at any health care facility, filings with the National Practitioner Data Bank (NPDB), all personnel and accreditation files, all procedure and surgery logs, all quality/performance and physician profiles, all correspondence relating to medical staff privileges, all applications for professional liability insurance and all applications for approval as a medical service provider on a health plan.
 {¶ 23} On October 21, 2005, upon motion by Dr. Chughtai, the trial court stayed Huntsman's action, pending a decision by this court inFilipovic v. Dash, M.D., Stark App. Nos. 2005CA00209 and 2005CA00211,2006-Ohio-2809, regarding the constitutionality of R.C. 2305.252. On May 22, 2006, in Filipovic, this Court found R.C. 2305.252 to be constitutional in that it does not preclude discovery of information which, while undiscoverable from peer review committee records, is available from original sources. Accordingly, the trial court set the Huntsman case to proceed.
 {¶ 24} On October 5, 2006, the trial court issued seven judgment entries in response to the pending discovery matters. *Page 8 
 {¶ 25} In one of the entries filed on October 5, 2006, the trial court made several different orders as to disclosure of documents by the appellants. Pertinent to this appeal, the trial court ordered Dr. Chughtai personally to produce any of the following documents in his possession:
 {¶ 26} "2. All documents in any way relating to [Dr.] Chughtai's initial application for medical privileges and all applications for renewal of medical privileges at any health care facility, including but not limited to Aultman Hospital and Massillon Community Hospital * * *
 {¶ 27} "4. All documents in any way relating to filings with the National Practitioner Data Base (NPDB), the Joint Commission on Accreditation of Health Care Organizations (JCAHO), the Federation of State Medical Board's (FSMB's) Physician Disciplinary Data Bank and the Ohio State Medical Board in any way relating to Dr. Chughtai * * *.
 {¶ 28} "9. All documents in any way relating to [Dr.] Chughtai's accreditation and/or credentialing as a member of any hospital medical staff. This request includes but is not limited to any document in any way relating to [Dr. Chughtai's] initial application for medical staff privileges at Aultman Hospital and/or Massillon Community Hospital and/or any renewal application for medical staff privileges at Aultman Hospital and/or Massillon Community Hospital."
 {¶ 29} With regard to documents held by the medical insurance companies/plans and by the professional liability insurance companies, in a separate judgment entry filed on October 5, 2006, the trial court held as follows: *Page 9 
 {¶ 30} "Physicians Insurance Company, Physicians Insurance Company of Ohio, Western Indemnity Insurance Company, Sirak-Moore Insurance Agency, Evanston Insurance Company, Zurich American Insurance Company, Frontier Insurance Company, Medical Mutual of Ohio, Anthem Blue Cross Blue Shield, American International Insurance Company, the Bureau of Workers' Compensation, Medicare, Medicaid and Aultcare HMO shall comply with their obligations to produce the subpoenaed documents IN THE FOLLOWING MANNER:
 {¶ 31} "The Court will limit Plaintiffs request to documents that only relate to Sajid Q. Chugtai, M.D.
 {¶ 32} "The parties will submit the requested discovery to the Court for an in camera inspection within 30 days of the date of this entry.
 {¶ 33} "If the requested information/file is more than 50 pages, the attorney for Dr. Chughtai will immediately notify the Court as to the number of pages in the file. The Court will then evaluate the discovery request.
 {¶ 34} "Copies of any pleadings associated with any lawsuit that may be referenced in Dr. Chughtai's file need not be reproduced. The company will provide the case number, case name, court and dates in lieu of the pleadings."
 {¶ 35} It is from these discovery orders that appellant, Aultman Hospital, now seeks to appeal, setting forth the following assignment of error:
 {¶ 36} "THE TRIAL COURT ERRED BY (1) ORDERING DR. CHUGHTAI TO PRODUCE DOCUMENTS THAT HE PROVIDED TO AULTMAN HOSPITAL'S PEER REVIEW COMMITTEE AND THAT HAVE BECOME PART OF AULTMAN'S CREDENTIALING FILES; AND (2) INTERPRETING R.C. 2305.252 AS PERMITTING *Page 10 
DISCOVERY OF MATERIALS FROM THE PEER REVIEW COMMITTEES OF HEALTH INSURERS AND PROFESSIONAL LIABILITY INSURERS AS ORIGINAL SOURCES AND ORDERING AN IN CAMERA INSPECTION THEREOF RESULTING IN A COMPROMISE OF THE PEER REVIEW PRIVILEGE."
 {¶ 37} After the notice of appeal was filed, on November 28, 2006, Huntsman filed a motion to dismiss the appellant's appeal from the October 5, 2006, orders. The motion argued that Aultman Hospital lacked standing to appeal and that one of the orders was not a final, appealable order. On January 7, 2007, the appellant filed a motion in opposition. On January 25, 2007, this Court ordered that the motion to dismiss would be considered at the time of the merit review.
 {¶ 38} We must first address three preliminary issues pertaining to Aultman's assignment of error before reaching the merits. These issues are as follows: what statutory law is applicable to the appeal; whether the matter on appeal is a final, appealable order and whether the appellant, Aultman Hospital, has standing to bring this appeal.
 APPLICABLE LAW {¶ 39} Huntsman argues that the former version of R.C. 2305.251 is applicable to this case as opposed to the current version of the statute, which was renumbered and modified as R.C. 2305.252 and which became effective April 9, 2003. In support, Huntsman argues that the events that gave rise to this case occurred in June 1999, prior to the effective date of R.C. 2305.252, and that the revised version of the statute gives no indication that it was to be applied retroactively. In addition, Huntsman contends that the statute affects a substantive right, thereby foreclosing retroactive *Page 11 
application. We find that this issue was addressed and decided by this Court in Huntsman I, whereby this Court held that the revised version of the statute affected a procedural right and was therefore applicable to the case sub judice. The complaints in this case were originally filed on December 15, 2000, dismissed without prejudice on September 24, 2001, and refiled on September 20, 2002. Accordingly, we hereby find that the revised version of the statute is applicable for the reasons set forth in Huntsman I.
 JURISDICTION-FINAL APPEALABLE ORDER {¶ 40} In regard to the second part of appellant's assignment of error, the appellant argues that the trial court's order, denying the motion to quash and motion for a protective order and ordering an in camera inspection of what appellant alleges are peer review records, is a final, appealable order pursuant to R.C. 2305.252. R.C. 2305.252
states that "* * * An order by a court to produce for discovery or for use at trial the proceedings or records described in this section [i.e. peer review records] is a final order." Appellee argues that a trial court's order for an in camera inspection of certain documents, rather than an order to provide documents to the adverse party, is a non-final order. We agree with the appellee.
 {¶ 41} Pursuant to Section 3(B)(2), Article IV of the Ohio Constitution, this Court's appellate jurisdiction is limited to the review of final orders of lower courts. "* * * The entire concept of `final orders' is based upon the rationale that the court making an order which is not final is thereby retaining jurisdiction for further proceedings. A final order, therefore, is one disposing of the whole case or some separate and distinct branch thereof." Noble v. Colwell, (1989),44 Ohio St. 3d 92, 94, 540 N.E.2d 1381 quoting *Page 12 Lantsberry v. Tilley Lamp Co. (1971), 27 Ohio St. 2d 303, 306,272 N.E.2d 127. "A judgment that leaves issues unresolved and contemplates that further action must be taken is not a final appealable order."State ex rel. Kieth v. McMonagle, 103 Ohio St. 3d 430, 2004-Ohio-5580,816 N.E. 2d 597, at paragraph 4, citing Bell v. Horton (2001),142 Ohio App. 3d 694, 696, 756 N.E.2d 1241.
 {¶ 42} R.C. 2505.02 (B) defines a final order to include:
 {¶ 43} "(B) An order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is one of the following:
 {¶ 44} "(1) An order that affects a substantial right in an action that in effect determines the action and prevents a judgment;
 {¶ 45} "(2) An order that affects a substantial right made in a special proceeding or upon a summary application in an action after judgment;
 {¶ 46} "(3) An order that vacates or sets aside a judgment or grants a new trial;
 {¶ 47} "(4) An order that grants or denies a provisional remedy and to which both of the following apply:
 {¶ 48} "(a) The order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy.
 {¶ 49} "(b) The appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action * * *."
 {¶ 50} As used section R.C. 2505.02: *Page 13 
 {¶ 51} "(1) `Substantial right' means a right that the United States Constitution, the Ohio Constitution, a statute, the common law, or a rule of procedure entitles a person to enforce or protect.
 {¶ 52} "(2) `Special proceeding' means an action or proceeding that is specially created by statute and that prior to 1853 was not denoted as an action at law or a suit in equity.
 {¶ 53} "(3) `Provisional remedy' means a proceeding ancillary to an action, including, but not limited to, a proceeding for a preliminary injunction, attachment, discovery of privileged matter, suppression of evidence, a prima-facie showing pursuant to section 2307.85 or 2307.86
of the Revised Code, a prima-facie showing pursuant to section 2307.92
of the Revised Code, or a finding made pursuant to division (A)(3) of section 2307.93 of the Revised Code. R.C. 2505.02(A) * * *" (Emphasis added).
 {¶ 54} Generally, discovery orders are not appealable. Walters v.Enrichment Center of Wishing Well, Inc. (1997), 78 Ohio St.3d 118,676 N.E. 2d 890. However, if the judgment orders a party to disclose allegedly privileged material, it is appealable pursuant to R.C. 2505.02(A) (3) and (B) (4).
 {¶ 55} An exception would be when the trial court directs a witness opposing a discovery request to submit the requested materials to the trial court for an in camera review. In that case, when the trial court orders that the materials shall be subject to an in camera review so that the court may determine their discoverable nature, the order for an in camera review is not a final, appealable order pursuant to R.C. 2505.02. Bell v. Mount Sinai Medical Center (1993), 67 Ohio St. 3d 60,65, 616 N.E. 2d 181. See, also, King v. American Standard Ins. Co., Lucas App. No. L-06-1306, 2006-Ohio-5774 *Page 14 
(holding that a court's order directing "a plaintiff to submit requested materials to an in camera review so that the court can determine whether the documents are protected from disclosure on some alternative basis, including other bases of privilege or confidentiality, * * * is not a final appealable order * * *); Gupta v. Lima News, 143 Ohio App. 3d 300,2001-Ohio-2142, 757 N.E. 2d 1227 (holding that only if the court compelled disclosure of the documents after an in camera inspection would the appellant's substantial rights be affected and the order would become final, and thus appealable); Ingram v. Adena Health System
(2001), 144 Ohio App. 3d 603, 761 N.E. 2d 72; Neimann v. Cooley (1994),93 Ohio App. 3d 81, 637 N.E. 2d 72; Keller v. Kehoe, Cuyahoga App. No. 89218, 2007-Ohio-6625.
 {¶ 56} In this case, the trial court ordered the documents to be submitted to it for an in camera inspection. The order does not appear to exclude the possibility that the trial court will review the documents to determine whether each are protected by the peer review privilege in R.C.2305.252. The trial court has retained jurisdiction to make further determinations regarding the discoverability of the requested materials.
 {¶ 57} Appellant urges us to find that an in camera inspection would essentially open the documents to some review which would compromise the confidential nature of the documents and violate the privilege set forth in R.C. 2305.252, citing in support Everage v. Elk and Elk,159 Ohio App. 3d 220, 2004-Ohio-6186, 823 N.E. 2d 516. In Everage, the trial court ordered an in camera inspection of documents relating to grievances which had been filed against attorneys in the law firm. Initial grievance filings, until probable cause has been determined, are usually not public. *Page 15 
 {¶ 58} In King v. American Standard Ins. Co., supra, the court addressed this issue. In King, the appellant argued that an in camera inspection would let the proverbial cat out of the proverbial bag. TheKing court stated as follows: "We have only found one appellate court that agrees with this argument. [footnote omitted]. In Everage v. Elkand Elk * * * the Third District Court of Appeals states:
 {¶ 59} "The trial court's denial of appellant's motion for a protective order regarding grievances or complaints filed with an attorney disciplinary panel is a final, appealable order, as it relates to the discovery of privileged matter. Due to the unique and confidential circumstances of an attorney disciplinary proceeding, the disclosure could not be meaningfully appealed after the trial court's in camera inspection. Once the trial court reviews the documents, their confidentiality will have been compromised. Accordingly the trial court's order for the production of documents determines the discoverability matter, See R.C. 2505.02(B) (1).' Id."
 {¶ 60} Upon review of this argument, the King court held as follows: "We find this reasoning unpersuasive. Disclosing privileged information to a judge for in camera inspection is not tantamount to disclosing it to the opposing party in the case. Confidentiality has not been compromised; our judiciary can be trusted to keep confidential information confidential." King v. American Standard Ins. Co. supra at paragraph 27.
 {¶ 61} The King court further found its decision to be in conflict with Everage v. Elk and Elk and certified the matter to the Supreme Court for review. Specifically, they certified the following question, "Is an order to turn over allegedly privileged material to the trial court for an in camera inspection a final appealable order pursuant to *Page 16 
R.C. 2505.02(A)(3) and (B)(4). On January 24, 2007, the Supreme Court dismissed the case holding that no conflict existed. King v. Am. Std.Ins. Co. of Ohio, 112 Ohio St.3d 1437, 860 N.E.2d 763, 2007-Ohio-152
(Ohio Jan 24, 2007) (TABLE, NO. 2006-2162)
 {¶ 62} We concur with the decision in King v. American Standard Ins.Co. and find the decision in Everage to be both unpersuasive and distinguishable from the facts in this case. In Everage, the court examined the disclosure of confidential documents for in camera review under circumstances only applicable to complaints made to the Office of the Disciplinary Counsel and pursuant to the Ohio Supreme Court's Gov.Bar. R.V. The rules specifically state that attorneys involved in the grievance process have a right to privacy. Privacy is defined by the rule as "the right of an attorney to the right of privacy as to the proceedings, a right that may be waived in certain limited situations." See Gov. Bar R. V (11) (E) (1) (a) through (c).
 {¶ 63} Unlike the circumstances in Everage, the case sub judice involves the peer review privilege and the protection provided by R.C. 2305.252. The peer review privilege is meant to promote the free flow of information, not to protect a privacy right. Nothing in R.C. 2305.252
sets forth a right to privacy. Furthermore, the protection of the free flow of information into a peer review process will not be compromised by an in camera review. A private review, prior to any order for the production of documents to an adverse party, by a competent judge who is sworn to maintain confidentiality does not compromise the free flow of information that the privilege is meant to protect.
 {¶ 64} In addition, Everage is distinguishable in another way from the case sub judice. The trial court's order in Everage dealt with a very specific and definite class of information: grievances which had been filed against attorneys. The documents subject *Page 17 
to the court's order in the case sub judice are not as homogeneous in nature. In other words, the trial court, in the case sub judice, could issue different rulings regarding the peer review privilege as to each document presented.
 {¶ 65} For these reasons we find that the trial court's order of October 5, 2006, requiring various insurance companies, the Sirak-Moore Insurance Agency, the Bureau of Workers' Compensation, Medicare, Medicaid, Aultcare HMO, etc. to produce documents to the trial court for an in camera inspection, is not a final, appealable order. Accordingly, this court lacks jurisdiction to consider the second part of appellant's assignment of error.
 STANDING[2] {¶ 66} In the first part of appellant's assignment of error, the appellant argues that the documents which Huntsman has requested from Dr. Chughtai are privileged pursuant to 2305.252 and are, therefore, not discoverable. Appellant Aultman further argues that the privilege attaches to applications submitted by Dr. Chughtai to any peer review process of a hospital or health care facility and any documents submitted to the National Practitioner Data Bank, Joint Commission on Accreditation of Healthcare Organizations, the Federation of State Medical Board's Physician Disciplinary Data Bank and the Ohio State Medical Board. Appellant argues that, by ordering Dr. Chughtai to produce such documents, the trial court has ordered him to produce documents which form a peer review committee's file. *Page 18 
 {¶ 67} In the motion to dismiss filed on November 28, 2006, Huntsman argues that Aultman was not a party to the discovery requests made to Dr. Chughtai and cannot assert the issue of privilege on Dr. Chughtai's behalf and, therefore, lacks standing to bring this appeal. In response, Aultman argues that pursuant to R.C. 2305.252, it has a substantial interest in the trial court's discovery orders and an obligation to protect the privileged information from potential disclosure.
 {¶ 68} In case number 2006CA00331, a related appeal, we found that the trial court erred as a matter of law in compelling Dr. Chughtai to produce documents which he provided to the health care entities for use in their peer review processes including initial applications for medical privileges, applications for the renewal of medical privileges, applications for accreditation and/or applications pertaining to credentialing, and we reversed, in part, the trial court's discovery order.
 {¶ 69} The arguments made by appellant Aultman Hospital in the case sub judice are the same arguments made by Sajid Q. Chightai, M.D. and Sajid Chughtai M.D. Inc. in case number 2006 CA 00331. Dr. Chughtai, in his appeal, incorporated Aultman's arguments by reference. Therefore, we find the appellant's assignment of error to be moot as it relates to Dr. Chughtai's initial applications for medical privileges, applications for the renewal of medical privileges, applications for accreditation and/or applications pertaining to credentialing.
 {¶ 70} However, since we found that the trial court did not err in compelling Dr. Chughtai to produce documents relating to filings with the National Practitioner Data Base(NPDB), the Joint Commission on Accreditation of Healthcare Organizations (JCAHO), the Federation of State Medical Board's (FSMB's) Physician Disciplinary Data *Page 19 
Bank and the Ohio State Medical Board, we shall address the issue of Aultman's standing to invoke the peer review privilege in regard to information provided to those entities by Dr. Chughtai.
 {¶ 71} We find that Aultman Hospital lacks standing to appeal the portion of the trial court's October 5, 2006, judgment entry, addressing appellee Huntsman's Third Motion to Compel Dr. Chughtai to produce documents, which orders Dr. Chughtai to produce all documents relating to filings with the National Practitioner Data Base (NPDB), the Joint Commission on Accreditation of Healthcare Organizations, the Federation of State Medical Board's Physician Disciplinary Data Bank and the Ohio State Medical Board [hereinafter, NPDB, etc.] in any way relating to Dr. Chughtai.
 {¶ 72} Aultman Hospital argues that these documents "form a peer review committee's file" and, thus, are protected by the peer review committee's privilege. The peer review privilege in R.C. 2305.252
protects the records possessed and/or used by a peer review committee of a health care entity, but "[i]nformation, documents, or records otherwise available from original sources are not to be construed as being unavailable for discovery or for use in any civil action merely because they were produced or presented during proceedings of a peer review committee but the information, documents or records are available only from the original sources and cannot be obtained from the peer review committee's proceedings or records." R.C. 2305.252. Therefore, documents filed by Dr. Chughtai with the NPDB, etc. may be included in the records of Aultman Hospital's peer review committee, and if so, those records would be protected by the privilege granted to Aultman Hospital's peer review committee. But that privilege does not extend to documents filed by Dr. Chughtai with the NPDB, etc. *Page 20 
Aultman Hospital's peer review committee's privilege does not extend to documents/information submitted by Dr. Chughtai to other entities just because those documents are of a type that would generally be included in, and may actually be included in, Aultman Hospital's peer review committee's records.
 {¶ 73} Appellant's appeal as it pertains to the first part of the assignment of error is dismissed because it is moot in part and because Aultman lacks standing to invoke the peer review privilege regarding documents which Dr. Chughtai filed with the NPDB and etc.
 {¶ 74} Appellant's appeal as it pertains to the second part of the assignment of error is dismissed because this Court lacks jurisdiction over a non-final order.
 Edwards, J., Farmer, P.J., and Wise, J. concur. *Page 22 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the appeal of Aultman Hospital is dismissed.
The Motion to Dismiss filed by appellee on November 28, 2006, is granted as to the issue of Aultman Hospital's lack of standing to appeal the trial court's order of October 5, 2006, directing Dr. Chughtai to produce all documents in any way relating to filings with the National Practitioner Data Base, the Joint Commission on Accreditation of Healthcare Organizations, the Federation of State Medical Board's Physician Disciplinary Data Bank and the Ohio State Medical Board in any way relating to Dr. Chughtai, and is granted as to the issue of lack of a final, appealable order regarding the trial court's order of October 5, 2006, which directed various medical insurance *Page 23 
companies/plans and professional liability insurers to produce documents to the trial court for an in camera inspection. Said Motion to Dismiss is moot regarding Aultman Hospital's standing to appeal other issues. Costs assessed to appellant.
[1] The subpoenas for Medical Mutual of Ohio, Anthem Blue Cross Blue Shield, American International Insurance Company, Frontier Insurance Company, Zurich American Insurance Company, Evanston Insurance Company, Physicians Insurance Company of Ohio, Physicians Insurance Company and Western Indemnity Insurance Company were served "c/o Sirak-Moore Insurance Agency, as Agent * * *"
[2] We have previously found that the order for an in camera inspection of documents to be produced by the medical insurance providers and the liability insurance companies is not a final appealable order and accordingly, this Court lacks jurisdiction to consider the order on appeal. Therefore we shall not address Aultman's standing as it pertains to that order. *Page 1